# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

United States,                              )
                                            )
      Plaintiff,                         )
                                            )
                                            )
vs.                                         )    Case No. 3:11-cv-0734
                                            )
Geneva Terrace Apartments, Inc., and        )
Nicolai Quinn,                              )
                                            )
      Defendants.                        )

## CONSENT ORDER AMONG THE UNITED STATES, NICOLAI QUINN, AND GENEVA TERRACE APARTMENTS, INC.

### I. INTRODUCTION

1. This action was filed by the United States to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619.

2. The United States alleges that Geneva Terrace Apartments, Inc., owns the Geneva Terrace Apartments, a ninety-six-unit apartment complex located at 5400 Mormon Coulee Road, La Crosse, Wisconsin. Geneva Terrace Apartments, Inc. offers apartments in that complex for rent. Defendant Nicolai Quinn managed and operated the Geneva Terrace Apartments on behalf of Geneva Terrace Apartments, Inc., at the time of the alleged acts.

3. The United States alleges that on or about March 10, 2010, Brenda Young, an African-American woman, asked if a two-bedroom unit would be available for lease at Geneva Terrace starting May 1, 2010. Nicolai Quinn falsely told her that no units were available.

4. The United States alleges that shortly after March 10, 2010, Brenda Young and her husband, Marcus Young, contacted the Metropolitan Milwaukee Fair Housing Council ("MMFHC"), a not-for-profit organization that works to eliminate housing discrimination, and told the MMFHC that they believed they had been the victims of housing discrimination at the Geneva Terrace Apartments.

5. The United States alleges that in response to the Youngs' complaint, the MMFHC conducted two tests between April 2010 and June 2011 to evaluate the Defendants' compliance with the Fair Housing Act. Testing is the simulation of a housing transaction that compares responses given by housing providers to different types of home-seekers to determine whether illegal discrimination is occurring. The testing conducted by the MMFHC revealed that the Defendants falsely told African-American testers that units were not available for rent.

6. The United States alleges that Nicolai Quinn and Geneva Terrace Apartments, Inc., have engaged in a pattern or practice of discrimination on the basis of race or color and/or a denial of rights to a group of persons that raises an issue of public importance, in violation of 42 U.S.C. § 3614, in the rental of dwelling units at the Geneva Terrace Apartments.

7. The United States alleges that Nicolai Quinn and Geneva Terrace Apartments, Inc., have refused to negotiate for the rental of, or otherwise made unavailable or denied housing to persons because of race or color, in violation of 42 U.S.C. § 3604(a); discriminated against persons in the terms, conditions or privileges of rental, or in the provision of services or facilities in connection therewith, because of race or color, in violation of 42 U.S.C. § 3604(b); and discriminated by representing to persons because of race or color that dwellings were not available for inspection or rent when such dwellings were in fact so available, in violation of 42 U.S.C. § 3604(d).

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614. Venue is proper under 28 U.S.C. § 1391(b) as the claims alleged herein arose in the Western District of Wisconsin.

9. The Defendants deny the allegations in the United States' Complaint and have asserted non-discriminatory reasons for their actions.

10. The United States and the Defendants have agreed that to avoid protracted and costly litigation, this lawsuit should be resolved without a trial. Therefore, the parties consent to the entry of this Consent Order, as shown by the signatures below.

**ACCORDINGLY, it is hereby ADJUDGED, ORDERED, and DECREED:**

## II. GENERAL INJUNCTION

11. Defendants, and all other persons in active concert or participation with them, are enjoined, with respect to the rental or sale of dwellings,[1] from:

---

1. The term "dwellings" has the meaning set out in the Fair Housing Act, 42 U.S.C. §3602(b).

  a. Refusing to rent or sell a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the rental or sale of a dwelling, or otherwise making unavailable or denying a dwelling, to any person because of race or color;

  b. Discriminating against any person in the terms, conditions, or privileges of the rental or sale of a dwelling, or in the provision of services or facilities in connection therewith, because of race or color;

  c. Making any statement, oral or written, in connection with the rental or sale of a dwelling, that expresses or indicates any preference, limitation, or discrimination, or an intent to make any such preference, limitation, or discrimination, on the basis of race or color; and

  d. Representing to persons because of race or color that any dwelling is not available for inspection, rent, or sale when such dwelling is, in fact, so available.

12. Attached as Appendix A hereto is a list of all dwellings in which Defendants currently have an ownership or management interest; serve(s) as an agent for the owner(s) of; or from which the Defendant(s) is to receive any portion of the proceeds of the sale or rental thereof as of the date of this Order ("Subject Properties"). Defendants certify that Appendix A is an accurate and complete list of currently covered dwellings.

4

## III. NONDISCRIMINATION POLICY

13. Upon entry of this Consent Order, Defendants shall implement the Nondiscrimination Policy appearing at Appendix B at the Subject Properties.

14. Within 15 days of the entry of the Consent Order, Defendants shall distribute the Nondiscrimination Policy to all of their current tenants, employees, agents, and anyone acting under the direction of the Defendant(s), who has responsibility for showing, renting, managing, or operating any and all dwelling units at the Subject Properties. Defendants shall review this policy, along with a question and answer session, with each employee, agent, or anyone acting under their direction, on an annual basis thereafter.

15. Within 15 days of the entry of this Consent Order, Defendants shall take the following steps to notify the public of their Nondiscrimination Policy:

    a. Prominently post at all rental offices that Defendant(s) currently or subsequently use for the rental of dwellings, a fair housing sign no smaller than ten (10) inches by fourteen (14) inches that indicates that all apartments are available for rent on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement;

    b. Whenever any dwelling unit at any of the Subject Properties is available for rent, the Defendant(s) shall prominently post an easily readable "For Rent" or "Vacancy" sign or notice at the apartment building in which the dwelling unit is available. The sign or notice shall include the slogan

        "Equal Housing Opportunity" and/or the fair housing logo. Such slogan and logo shall be prominently displayed and easily readable;

   c.   Include the words "Equal Housing Opportunity" and/or the fair housing logo in all rental advertising conducted by Defendants, or their agents or employees, in newspapers, flyers, handouts, telephone directories, and other written materials; on radio, television, internet, or other media broadcasts; and on all billboards, signs, pamphlets, brochures, and other promotional literature, provided that this requirement does not compel Defendants to advertise in any of these media, but does require compliance with this provision whenever Defendants so advertise. The words and/or logo shall be prominently placed and easily readable; and

   d.   Include the following phrase in the rental application(s) and the rental agreement(s) used for rental dwelling units in boldface type, using letters of equal or greater size to those of the text in the body of the document:

> We are an equal housing opportunity provider. We do not discriminate on the basis of race, color, sex, national origin, religion, disability, or familial status (having children under age 18).

### IV. TRAINING

16. Within 30 days of the entry of this Consent Order, Defendants shall provide a copy of this Order to their agents and employees involved in showing, renting, managing, or operating any dwelling unit at the Subject Properties. Defendants shall secure a signed

statement from each such agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the Policy. This statement shall be in the form of Appendix C.

17. During the term of this Consent Order, within 30 days after each new agent or employee becomes involved in showing, renting, or managing units at the Subject Properties, Defendants shall provide a copy of this Consent Order and the Nondiscrimination Policy to each such agent or employee and secure a signed statement from each agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the policy. This statement shall be in the form of Appendix C.

18. Within 90 days from the date of entry of this Consent Order, Defendants and their managers, agents, and employees shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race or color. The training shall be conducted by an independent, qualified third party, approved in advance by the United States, and shall last at least two hours. Any expenses associated with this training shall be borne by Defendants. Each individual who receives the training shall

7

execute the Certificate of Training and Receipt of Consent Order, appearing at Appendix D.

19. At a minimum, the training required by the preceding paragraph shall consist of the following:

    a. Instruction on the requirements of all applicable federal and state housing discrimination laws; and

    b. A question and answer session for the purpose of reviewing the foregoing areas.

20. All persons responsible for renting, managing, and/or operating dwelling units at the Subject Properties must receive the fair housing training, described in Paragraphs 16-18, within 90 days of entry of this Consent Order or within 30 days of beginning their work as manager(s), whichever shall occur later.

### V. NONDISCRIMINATORY STANDARDS AND PROCEDURES FOR SHOWING AVAILABLE DWELLING UNITS TO PROSPECTIVE TENANTS

21. Within 30 days from the date of entry of this Consent Order, Defendants shall develop and submit to the United States, with respect to the Subject Properties, objective, uniform, non-discriminatory standards and procedures for informing persons about and showing available dwelling units to prospective tenants. Such standards and procedures shall be approved by the United States in advance of their implementation and shall be consistent with the provisions of this Section. Within 5 days of when the United States approves the standards and procedures, Defendants shall implement and prominently display them in any office where there is rental activity and/or personal contact with

applicants. Defendants shall make available a copy of these standards and procedures upon request to any applicant for the rental of a dwelling. For the duration of this Consent Order, these standards and procedures may be modified only if written notice is given to counsel for the United States 30 days before the proposed modifications are to take effect and the United States makes no objection thereto.

22. The Nondiscrimination Policy and procedures described in Paragraphs 13-15, above, shall include the use of the following documents, which Defendants shall update as new information becomes available, and retain for the duration of this Consent Order:

   a. <u>Guest Cards</u>: Defendants shall ensure that, for all prospective tenants who inquire in person about dwelling units, a Guest Card is completed, either by the prospective tenant and/or the Defendants, that contains:

      i. The date of the prospective tenant's visit and, when the prospective tenant agrees to provide the information, the prospective tenant's name, address, daytime, and evening telephone numbers;

      ii. The race of the prospective tenant, based on the good-faith observation of Defendants or their employees or agents;

      iii. The apartment size the prospective tenant requests and the date on which the prospective tenant wishes to move;

      iv. Whether the prospective tenant filled out an application;

9

    v. Whether the prospective tenant was invited to see available dwelling units, and the address and unit number of each one shown and, if not shown, an explanation why not; and

    vi. The names of all employees/agents who assisted the prospective tenant.

  b. <u>Phone Logs</u>: Defendants shall ensure that, for all prospective tenants who inquire by telephone about dwelling units, the Defendants shall maintain a phone log that contains the following information:

    i. The date of the prospective tenant's phone call and, when the prospective tenant agrees to provide the information, the prospective tenant's name and telephone number(s);

    ii. The date and time on which the prospective tenant is going to view the apartment;

    iii. The apartment size the prospective tenant requests and the date on which the prospective tenant wishes to move;

    iv. Whether the prospective tenant was invited to see available dwelling units, and if not invited, an explanation why not; and

    v. The names of all employees/agents who assisted the prospective tenant.

  c. <u>Availability List</u>: Defendants shall ensure that they maintain and timely update an Availability List that includes the addresses and unit numbers of

    all dwelling units known to be available or reasonably expected to be available for rental within 30 days, including the date either Defendants or Defendants' agent(s) was first informed each would be available for rental and the first date it would be available for rental or occupancy by a new tenant. Defendants, their agents, and their employees shall share the complete information on the Availability List with each person who visits or calls to inquire about the availability of dwelling units.

  d. <u>Rental Applications</u>: Defendants, their agents, and their employees shall provide and process rental applications on a non-discriminatory basis and shall maintain all rental applications, whether deemed complete or incomplete, and any correspondence about the availability of dwelling units.

  e. <u>Waiting Lists</u>: Defendants, their agents, and their employees shall maintain waiting lists in a non-discriminatory manner and develop uniform standards for selecting individuals from the list, whether formally or informally maintained.

## VI. COMPLIANCE TESTING

23. The United States may take steps to monitor Defendants' compliance with this Consent Order including, but not limited to, conducting fair housing tests at any office(s) or locations at which the Defendant(s) conduct rental activities.

## VII. REPORTING AND DOCUMENT RETENTION REQUIREMENTS

24. Defendants shall, no later than 15 days after occurrence, provide to the United States notification and documentation of the following events:[2]

   a. Any change to the rules or practices regarding the Nondiscrimination Policy and procedures described in Paragraphs 13-15 or the nondiscriminatory standards and procedures discussed in Paragraphs 21 and 22;

   b. Notice of the acquisition of an indirect or direct ownership, financial, or management interest in any dwelling(s) for rent not identified in Appendix A;

   c. Proof of notification of the Nondiscrimination Policy and procedures described in Paragraphs 13-15, including executed copies of the Acknowledgment forms, appearing at Appendix B, and a list of the names and addresses for all tenants to whom the policy was provided; and

   d. Any written or oral complaint against any of the Defendants, or any of Defendants' agents or employees, regarding discrimination in housing. If the complaint is written, the Defendant(s) shall provide a copy of it with the notification. The notification shall include the full details of the

---

2. All documents or other communications required by this Consent Order to be sent to counsel for the United States shall be sent by commercial (non-USPS) overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 1800 G Street N.W., Suite 7002, Washington, D.C. 20006, Attn: DJ 175-86-56, or as otherwise directed by the United States. Facsimile transmissions shall be sent to (202) 514-1116.

complaint, including the complainant's name, address, and telephone number. The Defendant(s) shall also promptly provide the United States all information it may request concerning any such complaint and shall inform the United States within 15 days of the substance of any resolution of such complaint.

25. Within 90 days of the date of entry of this Consent Order, and every 6 months thereafter for the duration of this Consent Order, Defendants shall deliver to counsel for the United States a report containing information about their compliance efforts during the preceding reporting period, including but not limited to:

    a. Executed copies of Appendices C and D;

    b. Notification and documentation of the adoption and implementation of the Nondiscrimination Policy standards and procedures discussed in Paragraphs 13-15;

    c. Photographs of each office in which rental activity is conducted, showing the fair housing signs and Nondiscrimination Standards and Procedures, pursuant to Section III of this Order;

    d. Copies of rental applications guest cards, availability lists, rental applications, and other information recorded by any means related to any inquiries regarding the availability of rental dwellings, maintained pursuant to Section V of this Order;

    e.    A list of all rental properties in which Defendants or their members, acquire an ownership or management interest, in whole or in part, after the date of entry of this Order, including the street address, the number of rental units at each property, and a description of the interest in the property;

    f.    Notification of any purchase, inheritance, or acquisition of dwellings pursuant to Section X of this Order; and

    g.    Any advertisements published in local newspapers pursuant to Paragraph 15.

In addition to the reports required above, the Defendants shall submit a final report to the United States no later than 60 days before the expiration of this Order.

26. During the period in which this Consent Order is in effect, Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Order, including, but not limited to, all guest cards, availability lists, waiting lists, rental applications, leases, rental roll ledgers, and occupancy lists. Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents.

## VIII. MONETARY DAMAGES FOR AGGRIEVED PERSONS

27. On or before December 4, 2012, or within 5 days of the entry of this Consent Order, whichever comes later, Defendants shall send to counsel for Marcus Young and Brenda

14

Young, by overnight delivery,[3] a check in the amount of $47,500, made payable to "Herrick & Kasdorf Client Trust Account," for the purpose of compensating Marcus Young and Brenda Young, inclusive of attorneys' fees.

28. Without admitting liability, Defendants agree that the monetary damages amounts required to be paid pursuant to this Section can be considered to be debts for willful and malicious injury by Defendants within the meaning of 11 U.S.C. § 523(a)(6) and thus neither Defendant shall seek to discharge any part of their respective debts under Paragraph 27 of this Order in bankruptcy.

## IX. CIVIL PENALTY

29. On or before December 4, 2012, Defendants shall pay a total of $10,000 to the United States as a civil penalty, pursuant to 42. U.S.C. § 3614(d)(1)(C). This payment shall be delivered to counsel for the United States in the form of a cashier's check payable to the "United States Treasury."

30. Without admitting liability, Defendants agree that the civil penalty payment referenced in Paragraph 29 is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. Neither Defendant shall seek to discharge any part of this debt in bankruptcy.

---

[3] Payment and all other correspondence should be sent by overnight delivery to the following address: David R. Sparer, Esq., Herrick & Kasdorf, LLP, 16 N. Carroll St., Suite 500, Madison, WI 53703, 608-257-1369.

## X. ACQUISITION OR TRANSFER OF INTEREST IN DWELLINGS

31. If at any time while this Consent Order remains in effect, Defendant Geneva Terrace Apartments, Inc., maintains that its obligations under this Consent Order have terminated or changed because it has sold or transferred any portion of Geneva Terrace Apartments to a bona-fide third party purchaser in an arms-length transaction, Defendant Geneva Terrace Apartments, Inc., shall inform the United States within thirty (30) days of such transaction and provide the date of the sale or transfer, copies of the sale or transfer documents, and the name(s) and contact information for the subsequent purchaser.

32. If at any time while this Consent Order remains in effect, Defendant Quinn is employed in any capacity in connection with the rental of any residential dwelling unit at any property, he shall, within thirty (30) days of starting such new employment, notify the United States in writing of his new employment, including the name of the property where he is employed and the name, address, and telephone number of his employer.

33. If any transfer of Defendant's interest in any dwelling covered by this Order is not an arm's-length transaction, Defendant and the new owner(s) shall remain jointly and severally liable for any violations of this Order for its duration.

## XI. NON-COMPLIANCE WITH CONSENT ORDER

34. By agreeing to entry of this Consent Order, the United States and Defendants agree that in the event Defendants engage in any future violation(s) of the Fair Housing Act, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)

(C)(ii). This provision applies to any future violation, whether resolved voluntarily or through judicial proceedings.

35. The Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the case shall be dismissed with prejudice. This Order shall be in effect for a period of 5 years from the date of its entry. The United States may move the Court to extend the duration of the Consent Order in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

36. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by a Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Order or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XII. TIME FOR PERFORMANCE

37. Any time limits for performance imposed by this Order may be extended by mutual written agreement of the parties. The other provisions of this Order may be modified by

written agreement of the parties or by motion to the Court. If the modification is by written agreement of the parties, then such modification will be effective upon filing of the written agreement with the Court, and shall remain in effect for the duration of the Order or until such time as the Court indicates through written order that it has not approved the modification.

## XIII. EFFECT ON LITIGATION HOLDS

38. The parties agree that, as of the date of entry of this Order, litigation is not reasonably foreseeable concerning the matters described herein. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Consent Order, the party is no longer required to maintain such a litigation hold.

39. Paragraph 38 does not relieve Defendants of any responsibilities imposed by Section VII of this Consent Order.

## XIV. COSTS OF LITIGATION

40. Each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

Dated: *November 30*, 2012.

_____
United States District Judge